Commonwealth of Massachusetts
Superior Court

Essex, ss.

| | |
|---|---|
| T.H. Glennon Co., Inc. <br> *Plaintiff* | ) <br> ) <br> ) |
| v. | )    Docket No._____ <br> ) |
| Shonn Monday <br> *Defendant* | ) <br> ) |

## Complaint

Now comes the Plaintiff, T. H. Glennon, who makes complaint as follows:

### Parties

1) T.H. Glennon is a chemical company headquartered in Salisbury, Massachusetts. It makes coloring for mulch and water-based adhesives for textiles. The company has been in operation since 1964. The company is owned by President Brian Shea. The company is incorporated in, and a resident of, Massachusetts. However the company operates on an interstate basis, including with manufacturing facilities in Pennsylvania. T.H. Glennon is a national leader is its field.

2) Mr. Shonn Monday is a former employee of T.H. Glennon. He is a resident of Massachusetts. Mr. Monday was the northeast region sales manager for T.H. Glennon. He worked for the company for 8 years and covered territory in 12 states. Mr. Monday signed a confidentiality agreement as part of his employment.

### Events

3) Mr. Monday's employment with T.H. Glennon ended on June 28, 2018. Mr. Monday had refused to return to the company's offices for an interview to review alleged misconduct, so he had been terminated by letter and by email, and subsequently by phone.

4) On his hiring, Mr. Monday signed a confidentiality agreement, which is attached and incorporated herewith. The confidentiality agreement expressly delineates classifications of confidential information, trade secrets, and proprietary information. Mr. Monday promised to keep the company's information a secret.

5) Mr. Monday additionally had a great deal of access to internal documents and information. The corporate database to which he had access had more than 1000 customer contacts and file information.

6) Upon his effective termination, Mr. Monday's access to the company's internet based confidential customer database was terminated. Mr. Monday was also directed to return company property to Vice President Rocky Berry. T.H. Glennon was especially concerned with the company laptop, iPad, and phone provided to Mr. Monday. On July 5, 2018, Mr. Monday returned the three devices to Rocky Berry's home, in person, refusing to set foot on T.H. Glennon's property.

7) Upon its return, the company phone had been wiped clean. Important and confidential customer contact information, and communications with the company, were erased or destroyed.

8) The iPad which Mr. Monday has been assigned was also wiped clean, reverting to a reconfiguration status. The iPad had been configured to provide access to T.H. Glennon's

proprietary customer database. The iPad contained confidential information including, customer pricing, revenue figures, T.H. Glennon corporate revenue information, corporate sales plans and information, correspondence, photographs of onsite customer locations, in additional to corporate contacts. Mr. Monday's sales position was a traveling one, so all this information was saved locally on the iPad so he could access it, as needed. He also uploaded information learned in the course of his employment from the iPad to the corporate database.

9) The company laptop Mr. Monday returned was also wiped clean. The company laptop was loaded with approximately 100 email contacts, including personal contact information, for both T.H. Glennon and its customers. The laptop also had T.H. Glennon advertising information and sales literature.

10) After discovering that the three devices had been wiped, Ms. Berry contacted Mr. Monday to ask about the company's confidential information. Ms. Berry also inquired about why everything had been sanitized and the company's proprietary information had been deleted. Mr. Monday replied that he had linked the company's devices to his personal google email account as well as an iCloud/itunes account. He had removed the linkage, which, he asserted required, or rendered, the devices to their erased status.

11) Ms. Berry asked for access to Mr. Monday's personal accounts so that the proprietary information could be retrieved. Mr. Monday refused.

12) Mr. Monday has defiantly refused all attempt to seek the return of T.H. Glennon's information, including confidential information, proprietary information, intellectual property in the form of copyrighted and trade secret materials, as well as personal information which T.H. Glennon

is statutorily required to protect, and customer information which T.H. Glennon is also required to safeguard.

13) T.H. Glennon is concerned that Mr. Monday has destroyed, or rendered inaccessible their corporation information. This has hampered their efforts to continue sales in Mr. Monday's former territory by his successor.

14) T.H. Glennon must also safeguard its intellectual property and confidential information from misuse. Such misuse may include competitors gaining an unfair trade advantage, or breaches of the statutory obligations of privacy and information protection.

## Count I—Breach of Contract

15) All prior factual allegations are hereby repeated and re-incorporated.

16) The Confidentiality Agreement which Mr. Monday signed delineated that all the defined confidential information was the exclusive property of T.H. Glennon. Mr. Monday also agreed to keep confidential information confidential.

17) In the remedy section of the Confidentiality Agreement, Mr. Monday has expressly agreed that in addition to any other remedies, T.H. Glennon is entitled to an injunction restraining the employee from violating the agreement. The agreement also recites that fact that the value of proprietary information is inestimable, and that breach of the agreement would cause irreparable harm.

18) Mr. Monday has rendered all the information contained on the company's phone, laptop, and iPad inaccessible to the company.

19) Mr. Monday has access to all the information, or will have future access when another device is linked to his account.

20) Mr. Monday has taken confidential information and trade secrets out of the hands of T.H. Glennon, and either destroyed it or secreted it away for his own use.

21) Mr. Monday has violated the express terms of his confidentiality agreement by erasing the company devices, and further by denying the company reasonable access to its information in legal control and custody.

22) Mr. Monday has maliciously destroyed company information by wiping company devices.

23) Mr. Monday has taken this action in bad faith. He has deliberately broken his word and breached the covenant of good faith and fair dealing. He has refused all attempts to voluntarily mitigate or settle this dispute.

## Count II-Misappropriation of Trade Secrets

24) All prior factual allegations are hereby repeated and incorporated.

25) Mr. Monday has stolen protected trade secrets from T.H. Glennon. This information is essential to the operation of T.H. Glennon's sales operation in 12 states. Without this information, T.H. Glennon loses a material competitive advantage it has built up over years of struggle with a great deal of financial investment.

26) Mr. Monday's successor and the company are hampered in continuing relations with their customers and their attempts to continue innovating products for their clients.

27) Mr. Monday has also made off with communications from clients, which may include outstanding orders or obligations which T.H. Glennon is required to fulfill, but may not actually be aware of.

28) Mr. Monday had access to, and continues to have electronic access to, sales information, marketing strategies, production information, client files, contact information, and other confidential and proprietary information.

29) He has destroyed T.H. Glennon's access to its own information on its own devices. He has refused all attempts to voluntarily get reasonable access to the information.

30) Mr. Monday has also refused to provide any written or verbal assurance that the confidential information and trade secrets remain secret.

31) The Court is authorized to protect T.H. Glennon's interests under G. L. c. 93 and under the common law.

## Count III—Interstate Appropriation of Trade Secret

32) All prior factual allegations are herein repeated.

33) Mr. Monday's actions violated the Federal Trade Secret Protection Act (18 U.S.C. §1831, *et seq*). T.H. Glennon is entitled to relief under 18 U.S.C.§1835 (orders to preserve confidentiality) and §1836 (private proceedings to protect trade secrets).

34) The requisite element of interstate commerce is met by the interstate sales conducted by Mr. Monday. It is also met by the interstate production conducted by T. H. Glennon, between its manufacturing facility in Pennsylvania and its business offices in Massachusettts.

35) Much of the information erased, and kept, by Mr. Monday meets the definition of trade secret within the federal law.

36) T.H. Glennon has already lost access to information of incalculable value. It has also invested a great deal of resources to keep and protect its intellectual property.

## Count IV—Conversion

37) All prior factual allegations are reincorporated here.

38) Mr. Monday has converted trade secrets and confidential information. He has destroyed T.H. Glennon's access to its own information, and simultaneously preserved the information by linking it to his personal Google and Apple accounts.

39) Mr. Monday currently has access to the information. He has refused to return it to T.H. Glennon. He has refused to destroy the company information he possesses and has refused to provide assurances that the data has not been, and will not be, disclosed to competitors or other parties.

40) Therefore Mr. Monday has converted valuable intellectual property and confidential information.

## Prayer for Relief

41) T.H. Glennon prays for money damages commensurate with its losses and expenses.

42) T.H. Glennon further prays for equitable and injunctive relief, including under G. L. c. 93 §§ 42, 42A and 18 U.S.C. §§ 1835, 1836.

43) T.H. Glennon prays for contractual remedies under the Confidentiality Agreement that Mr. Monday signed.

44) T.H. Glennon further prays for exemplary double damages under G. L. c. 93 §42.

45) T.H. Glennon further and specially prays for all applicable relief under the Federal Trade Secret Protection Act.

## Miscellaneous

46) Because Mr. Monday and T.H. Glennon are both resident of Massachusetts, jurisdiction in the Superior Court is proper.

47) The Superior Court is a superior court of record of general jurisdiction, with equitable powers.

Case 1:18-cv-30120-WGY   Document 1-2   Filed 07/25/18   Page 8 of 8

48) Venue in Essex County is proper, based on T.H. Glennon's headquarters in Salisbury.

49) T.H. Glennon demands a jury trial on all claims so triable.

Wherefore the Plaintiff requests from the Court any and all relief the Court deems just and equitable.

> Respectfully Submitted,
>
> T.H. Glennon Co, Inc.
> By its Attorney
>
> Michael C. Walsh
> BBO 681001
> Walsh & Walsh LLP
> PO Box 9
> Lynnfield, MA 01940
> 617-257-5496
> Walsh.lynnfield@gmail.com