United States of America
District of Massachusetts

Suffolk, ss.

| | |
|---|---|
| T.H. Glennon Co, Inc. | ) |
| | ) |
| v. | )   Docket 18-CV-30120 |
| | ) |
| Shonn K. Monday | ) |

**Motion for Interim Relief**

Now comes the Plaintiff, T.H. Glennon Co. ("TH Glennon" or "Company") who moves for interim relief against Mr. Shonn Monday, for the preservation of the status quo until the Court can adjudicate the merits.

**Background**

TH Glennon is a chemical company based in Salisbury, Massachusetts with manufacturing facilities in Pennsylvania and an interstate and international customer base. TH Glennon has been in operation since 1964 and produces mulch colorant, through equipment of its own design, and water-based adhesives for textiles. For more than 8 years, Mr. Monday was one of TH Glennon's sale representatives covering the Northern Territory, made up of 12 states including all of New England. Mr. Monday's sales performance had recently suffered. However Mr. Monday refused to return to the corporate headquarters to be counseled. As the situation persisted, Mr. Monday's employment was terminated on June 28, 2018.

After some back and forth, on July 5, 2018, Mr. Monday returned three company devices to the home of Vice President Rocky Berry, namely a laptop, an iPad, and an iPhone. Subsequent review of the three devices confirmed that all three had been wiped clean. In-house and outside IT experts have been able to recover some of the intentionally deleted emails from the laptop, but the iPad and iPhone have thus far resisted all efforts at recovery.

Mr. Monday, when asked for an explanation, demurred that because of his long-term employment with the Company he had thought his position stable and had linked the devices to his personal Google and Apple accounts. Mr. Monday declined to allow the Company access to his accounts to retrieve their proprietary and confidential data.

On July 9, 2018, TH Glennon sent[1] Mr. Monday a letter demanding that he make arrangements to return and then destroy copies of the company's data. The letter provided that if arrangements were not made within a week, the Company would take legal action to enforce its rights and protect its trade secrets.

On July 17, 2018, after the expiration of the week, TH Glennon filed a complaint in the Essex Superior Court in Salem, docket no. 1877CV01050. TH Glennon also sought, and obtained, a temporary restraining order enjoining Mr. Monday from:

> making use in any way of the confidential and trade secret information referenced in the Verified Complaint and/or Emergency ex parte Motion for Temporary Restraining Order or deriving any economic benefit from same, or from destroying disclosing or disseminating any confidential or trade secret information referenced in the Verified Complaint and/or Emergency ex parte Motion for Temporary Restraining Order.

*Temporary Restraining Order of July 17, 2018* (attached). In her oral findings Justice Howe of the Superior Court found that TH Glennon had shown irreparable harm and a likelihood of success on the merits. The TRO was granted on a status quo basis, until a preliminary injunction could be heard. The hearing for the preliminary injunction[2] was set for July 26, 2018 at 2PM in Salem. That hearing was interrupted by the removal to Federal Court.

---

[1] The demand letter was sent by certified mail, receipt no. 7018 0360 0000 3471 3041.
[2] The TRO and short order of notice were returnable at the July 26th Hearing. Mr. Monday was served by the Hampshire Sheriff. He was also provided a courtesy copy directly from Plaintiff's Counsel. That was sent to him by express mail and was delivered before 10AM on July 20, 2018, receipt no. EE 204315867 US.

TH Glennon has since recovered 250-300 deleted emails from the laptop. The Company has discovered that Mr. Monday was running his own directly competing business for two years under the name TMG Green. The emails show a long pattern of Mr. Monday using TH Glennon resources to further TMG Green, including diverting clients from TH Glennon to TMG Green. Many other emails containing sensitive information, including trade secrets, were forwarded from Mr. Monday's TH Glennon corporate email to two of his personal accounts (at Yahoo! And at Google) as well as to Mr. Monday's wife. Mr. Monday has taken company financials, customer preferences, customer lists, ordering and pricing information, merchandizing information, marketing strategies, pictures of customer sites, TH Glennon's tote labelling system, as well as sales reports from outside his territory. TH Glennon also fears, based on Mr. Monday's assembling of sensors and manufactured components as well as his curious behavior while on temporary secondment to the manufacturing facilities, that Mr. Monday has accessed and stolen TH Glennon's proprietary chemical formulas and its novel coloring equipment.

Mr. Monday's destruction of the information on the company devices has proven, already, to have debilitating consequences. TH Glennon has recovered at least one order by a customer which Mr. Monday did not properly log or notify anyone at TH Glennon of. There are also a number of critical sales reports and projections written by Mr. Monday for the Company, for which the original electronic files are destroyed, and now exist only in hard copy. The underlying research of those reports is supposed to be saved for future reference, but the information is now destroyed and inaccessible to the Company.

TH Glennon understands that much of the information it cannot access is contained within cloud-based backups, linked to Mr. Monday's Apple iTunes/iCloud account and his personal Google account. This information, if not directly available to him now, will become available

when he synchronizes a new device to the accounts and automatically enables the cloud-based backups.

## Argument

I. **The Federal Court should immediately continue the Temporary Restraining Order and grant prompt hearing.**

Federal law provides that any state court order shall remain in effect until the District Court modifies or dissolves it.  28 U.S.C. §1450 (3rd para) ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.").  The matter is complicated because the State Superior Court had granted an *ex parte* emergency order, until it could properly hear the case on July 26, 2018.  The removal of the case to the Federal District Court has pretermitted that hearing.  The Temporary Restraining Order was conditioned upon a further hearing, on a set date, to comply with State Court rules and the constitutional requirements of due process.

Section 1450 does not continue temporary orders indefinitely, merely allowing the Federal District Court step into the State Court's shoes. Granny Goose Foods, Inc. v. Teamsters, 415 US 423, 435-437 (1974).

Since the State Court order is "until such hearing" the Federal District Court should continue the order until it can schedule a similar hearing, presumably expeditiously to give the Defendant a fair chance to be heard.  Without such immediate interim relief, the Defendant will profit by the disruption associated with the transfer of the case.

> Congress clearly intended to preserve the effectiveness of state court orders after removal…After removal, the federal court 'takes the case up where the State court left it off.' Duncan v. Gegan, 101 U.S. 810, 812 (1880). The 'full force and effect' provided state court orders after removal of the case to federal court was not intended to

>>be more than the force and effect the orders would have had in state court.

Granny Goose, at 436.

## II. The Court should grant a TRO

A party seeking a temporary restraining order must show (1) a substantial likelihood of success on the merits, (2) a risk of irreparable harm, (3) a favorable balance of the hardships, (4) that the order does not contravene the public interest. FLEXconn v. McSherry, 123 F.Supp.2d 42, 43 (D.Mass 2000). *See Also* Fed. R. Civ. Pro. Rule 65(b).

Mr. Monday has specifically agreed to the use of equitable remedies because of the irreparable harm caused by the loss of trade secrets and confidential information. In his confidentiality agreement, Mr. Monday warranted:

> 15. The Employee agrees and acknowledges that the Confidential Information is of a proprietary and confidential nature and that any failure to maintain the confidentiality of the Confidential Information in breach of this Agreement cannot be reasonably or adequately compensated for in money damages and would cause irreparable injury to the Employer. Accordingly, the Employee agrees that the Employer is entitle to, in additional to all other rights and remedies available to it at law or equity, an injunction restraining the Employee, any of its personnel, and any agents of the Employee, from directly or indirectly committing or engaging in any act restricted by this Agreement in relation to the Confidential Information.

*Confidentiality Agreement between T.H. Glennon and Shonn Monday of September 16, 2009*, pg 5-6. (attached). As found by T.H. Glennon's computer technician, Mr. Monday has already deliberately deleted T.H. Glennon's information and data. *Bruzzese IT Report* (attached). Much of the information from the laptop was not recoverable, in comparison with the expected information. *Id.* In fact, Mr. Monday bought, and had T.H. Glennon reimburse him for, a home use computer cleaner program. *CCleaner Receipt*. Mr. Monday has already deleted information, such as emails of which Mr. Bruzzese could only recover 250-300. There is a very real risk that

information, not in T.H. Glennon's possession despite being their property, could be destroyed. While some of this information has been spirited away, some it of it contained in cloud-based back-ups owned by Google and Apple under accounts controlled by Mr. Monday.

Substantial likelihood of success is a barrier which T.H. Glennon can meet.  Mr. Monday is in clear breach of the provisions of his confidentiality agreement.  Among other provisions, Mr. Monday was supposed to return, not destroy, T.H Glennon's confidential information.  Since the complaint was drafted, T.H. Glennon has learned that Mr. Monday has set up a company named TMG Green and is competing with them, in violation of the non-competition provision.  Mr. Monday has also taken away large swaths of T.H. Glennon internal corporate information and revenue and ordering information.  Mr. Monday achieved this by forwarding emails from his corporate email account to his personal Yahoo and Google accounts, as well as to his wife Debra Monday, who is also an officer of TMG Green.

Because Mr. Monday has asserted that he cannot access this information, he will not be harmed by a "status quo" order.  Because "[t]he essential characteristic of a trade secret being secrecy," any disclosure or dissemination would eradicate valuable intellectual property. Eastern Marble Products Co. v. Roman Marble, 372 Mass. 835, 840 (1977).  The requested order is calculated to inflict the minimum amount of obligations upon Mr. Monday while protecting the essential part of T.H. Glennon's intellectual property and confidential information.

## Conclusion

Wherefore, T.H. Glennon requests a Temporary Restraining Order, until such time as a Preliminary Injunction Hearing can be scheduled and briefed.

                                              Respectfully Submitted,

                                              T.H. Glennon Co, Inc.
                                              By its Attorney

>Michael C. Walsh
>BBO 681001
>Walsh & Walsh LLP
>PO Box 9
>Lynnfield, MA 01940
>617-257-5496
>Walsh.lynnfield@gmail.com

**Certificate of Service**

I, Michael Walsh, hereby certify that I have provide an electronic copy of this document to all participating ECF/CM filers through the court's electronic docketing system on this 31st day of July, 2018.

/S/ Michael Walsh